Randal BALDING, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 45A05–0401–CR–24.

Court of Appeals of Indiana.

July 22, 2004.

**170**

Charles E. Stewart, Jr., Crown Point, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Randal Balding appeals the trial court's decision to grant the State's motion compelling Balding to submit a DNA sample to be included in the Indiana DNA Database. We affirm.

### Issue

Balding raises one issue for our review, which we restate as whether the trial court properly granted the State's motion to compel Balding to submit a DNA sample to be included in the Indiana DNA Database.

### Facts and Procedural History

On September 5, 2002, Balding pled guilty to sexual battery, a Class D felony, pursuant to a plea agreement with the State. As required under the agreement, the trial court sentenced Balding to three years, with one-and-one-half years suspended, to be served on probation. On April 1, 2003, the probation department filed a petition to revoke Balding's probation for committing new offenses while on probation and for failing to pay court costs. On October 23, 2003, Balding admitted to violating his probation, and the trial court ordered Balding to serve the suspended portion of his sentence. The State filed a motion to compel Balding to submit a DNA sample to be included in the Indiana DNA Database. After a hearing, the trial court granted the State's motion. This appeal ensued.

### Discussion and Decision

Balding contends the trial court erred in granting the State's motion compelling him to submit a DNA sample to be included in the Indiana DNA Database because it violates his Fourth Amendment right to be free from unreasonable searches and seizures.[1] We disagree.

#### I. The Indiana DNA Database

[S]tates recognize that the use of DNA has become a powerful investigative tool that links suspects to crimes. There has also been an increasing recognition of the ability of DNA testing to exonerate the innocent. This recognition was evidenced by Congress' passage of the DNA Identification Act of 1994. This law provided funding for the Federal Bureau of Investigation's Combined DNA Indexing System ("CODIS"). This program "enables federal, state, and local laboratories to store and compare DNA profiles electronically and thereby link serial crimes to each other *and* identify suspects by matching DNA from crime scenes to convicted offenders."

On February 29, 1996, Indiana joined CODIS when our General Assembly es-

---

1. Balding does not raise a claim under Article I, Section 11 of the Indiana Constitution. Therefore, we leave for another day the issue of whether the compulsory collection of DNA samples from convicted offenders is constitutional under Article I, Section 11 of the Indiana Constitution.

tablished the Indiana DNA Database by enacting P.L. 100–1996, now codified at [Indiana Code chapter 10–13–6]. The statute requires individuals convicted of certain felonies ... to provide a DNA sample for testing and inclusion in a database so long as it does not pose an unreasonable risk to their health. The purpose of the testing is to analyze and type the genetic markers in the DNA sample, to assist law enforcement identification purposes, and for research and administrative purposes. Every other state has enacted similar legislation.

*Patterson v. State*, 742 N.E.2d 4, 10–11 (Ind.Ct.App.2000), *aff'd on reh'g, trans. denied, cert. denied*, 534 U.S. 961, 122 S.Ct. 368, 151 L.Ed.2d 279 (2001) (citations omitted and emphasis in original).

Indiana Code section 10–13–6–10 reads as follows:

(a) This section applies to the following:

(1) A person convicted of a felony under [Indiana Code article] 35–42 (offenses against the person), [Indiana Code section] 35–43–2–1 (burglary), or [Indiana Code section] 35–42–4–6 (child solicitation):

(A) after June 30, 1996, whether or not the person is sentenced to a term of imprisonment; and

(B) before July 1, 1996, if the person is held in jail or prison on or after July 1, 1996.

(2) A person convicted of a criminal law in effect before October 1, 1977, that penalized an act substantially similar to a felony described in [Indiana Code article] 35–42 or [Indiana Code section] 35–43–2–1 or that would have been an included offense of a felony described in [Indiana Code article] 35–42 or [Indiana Code section] 35–43–2–1 if the felony had been in effect:

(A) after June 30, 1998, whether or not the person is sentenced to a term of imprisonment; and

(B) before July 1, 1998, if the person is held in jail or prison on or after July 1, 1998.

(b) *A person described in subsection (a) shall provide a DNA sample* to the:
(1) department of correction or the designee of the department of correction if the offender is committed to the department of correction; or
(2) county sheriff or the designee of the county sheriff if the offender is held in a county jail or other county penal facility, placed in a community corrections program (as defined in [Indiana Code section] 35–38–2.6–2), or placed on probation.
A convicted person is not required to submit a blood sample if doing so would present a substantial and an unreasonable risk to the person's health.
(Emphasis added).

## II. Probation Revocation

██ Before we address Balding's Fourth Amendment claim, we note that it was Balding's underlying offense of sexual battery, and not his probation revocation, that brought him under the purview of Indiana Code section 10–13–6–10. However, the State did not request that Balding submit a DNA sample until after his probation revocation. When a court finds that a person has violated probation, the court may "order execution of the sentence *that was suspended at the time of the initial sentencing.*" Ind.Code § 35–38–2–3(g)(3) (emphasis added). The trial court cannot add new terms to the sentence.

In the instant case, Balding was convicted of the underlying offense of sexual battery in 2002. The Indiana DNA Database was established in 1996, and sexual battery was included as one of the crimes for

which a convicted offender was required to submit a sample. Thus, at the time of his conviction, Indiana Code section 10–13–6–10 required Balding to submit a DNA sample. The State's delay in requesting a sample until after the probation revocation did not make the requirement to submit a sample a new term of Balding's sentence.

### III. The Fourth Amendment

■ We have previously held the taking of a biological sample, such as a DNA sample, constitutes a "search" for purposes of the Fourth Amendment. *See Patterson,* 742 N.E.2d at 9. *See also Cutter v. State,* 646 N.E.2d 704, 711 (Ind.Ct.App.1995), *trans. denied.* Therefore, the compulsory collection of a DNA sample to be included in the Indiana DNA Database must comport with the Fourth Amendment.

■ The Fourth Amendment to the United States Constitution states, "The right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable* searches and seizures, shall not be violated . . . ." (emphasis added). The Fourth Amendment thus prohibits searches and seizures that are unreasonable. Generally, searches and seizures are unreasonable if conducted without an individualized suspicion of wrongdoing. *City of Indianapolis v. Edmond,* 531 U.S. 32, 37, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000). One exception to this rule exists where suspicionless searches are designed to serve "special needs," or needs that are beyond the normal need for law enforcement. *Id.* When such special needs are alleged as justification of a suspicionless search, we must conduct a context-specific inquiry and examine closely the competing private and public interests advanced by the parties. *Kopkey v. State,* 743 N.E.2d 331, 336–37 (Ind.Ct.App.2001), *trans. denied.*

### IV. Constitutionality of the Indiana DNA Database under the Fourth Amendment

Neither party asserts that an individualized suspicion of wrongdoing existed in this case. Therefore, the compulsory collection of DNA samples for inclusion in the Indiana DNA Database survives a Fourth Amendment challenge only if such searches serve a special need beyond the normal need for law enforcement and crime detection. We hold that they do.

#### A. The Indiana DNA Database Serves a "Special Need"

■ The Indiana General Assembly listed the following purposes for the Indiana DNA Database:

(1) To analyze and type the genetic markers contained in or derived from DNA.

(2) For law enforcement identification purposes.

(3) For research or administrative purposes, including:

(A) development of a population statistics data base after personal identifying information is removed;

(B) support of identification research and protocol development of forensic DNA analysis methods;

(C) quality control; and

(D) assisting in the recovery or identification of human remains from mass disasters or for other humanitarian purposes, including identification of missing persons who may be alive.

Ind.Code § 10–13–6–13. Although one of the listed purposes of the Indiana DNA Database is for normal law enforcement purposes, the statute lists other purposes for the database that go beyond the normal need for law enforcement. Therefore, the Indiana DNA Database serves a special need that goes beyond the normal need for law enforcement.

## B. Balancing of Competing Interests

■ Having determined that the compulsory collection of DNA samples from convicted offenders for inclusion in the Indiana DNA Database falls within the "special needs" exception to the Fourth Amendment, we must now balance the private and public interests advanced by the parties to determine whether the search was reasonable. We will examine the following considerations: (1) the nature of the privacy interest upon which the search intruded; (2) the character of the intrusion into Balding's privacy; and (3) the nature and immediacy of the governmental interest at issue and the efficacy of the Indiana DNA Database for meeting that interest. *Kopkey*, 743 N.E.2d at 337–38.

### 1. Nature of Privacy Interest

We first consider the nature of the privacy interest upon which the suspicionless search intruded. The Fourth Amendment does not protect all subjective expectations of privacy, but only those that society deems as "reasonable." *Id.SUPREME COURT, JANUARY TERM, 2004* at 337. Balding is a convicted offender who was incarcerated for violating his probation by committing a new offense. When the State requested that Balding submit a DNA sample, Balding had just been discharged from probation and sentenced to serve the suspended portion of his sentence because he violated probation. Based on these circumstances, his reasonable expectation of privacy was greatly reduced. *See, e.g., Kopkey*, 743 N.E.2d at 337 (holding person convicted of offense and sentenced to in-home detention had a greatly reduced expectation of privacy).

### 2. Character of Intrusion

Next, we consider the character of the intrusion into Balding's privacy. In this case, the State requested that Balding submit to a buccal swab. "A buccal swab is a specialized applicator with a sponge or foam tip, which is rubbed on the inside of the cheek to collect epithelial cells. This procedure is noninvasive and pain free." *See* http://www.forensicswabs.com/buccalswabs.htm. Thus, the character of the intrusion into Balding's privacy was minimal because the procedure itself was noninvasive and pain free.

### 3. Governmental Interest at Issue

Finally, we consider the nature and immediacy of the governmental interest at issue and the efficacy of the Indiana DNA Database for meeting it. In *Patterson*, we held

> Indiana has a substantial interest under the Fourth Amendment in promoting the use of DNA testing, not only in creating a database, but also in conducting criminal investigations and exonerating the innocent. Although the State intruded upon [the defendant's] privacy by analyzing his blood for DNA evidence, his privacy was outweighed by [the] State's interest in protecting the citizens of Indiana by promoting DNA analysis in criminal investigations. Under the facts of this case, the subsequent testing of [the defendant's] DNA was reasonable under the Fourth Amendment.

*Patterson*, 742 N.E.2d at 11. Likewise, the State has a substantial interest in creating a database of DNA samples of convicted offenders to assist in future criminal investigations and to use for research and other administrative purposes, such as developing a population statistics database.

Because Balding possessed a reduced expectation of privacy and the character of intrusion in this case was minimal, and because the State's interest was substantial in creating a DNA database, we hold the compulsory taking of Balding's DNA

sample with a buccal swab was a reasonable search under the Fourth Amendment.

*Conclusion*

The compulsory collection of DNA samples from convicted offenders to be included in the Indiana DNA Database does not violate the Fourth Amendment. Therefore, we affirm the trial court's decision granting the State's motion.

Affirmed.

SHARPNACK, J. and DARDEN, J. concur.