**James KEENEY, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 21A01–0611–CR–495.**

Court of Appeals of Indiana.

Sept. 13, 2007.

Sarah L. Nagy, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

NAJAM, Judge.

**STATEMENT OF THE CASE**

James Keeney appeals the trial court's order requiring him to provide a DNA sample to the State after he pleaded guilty to Forgery, a Class C felony. He raises a single issue for our review, namely, whether Indiana Code Section 10–13–6–10, which requires felons to submit such DNA samples, is unconstitutional.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

On May 8, 2006, Keeney pleaded guilty to forgery, a Class C felony, in connection with his management of the Connersville Municipal Airport in April of 2001. At his sentencing hearing on October 10, 2006, Keeney made a motion to withdraw his guilty plea, which the trial court denied. The court then sentenced Keeney to four years, with one and one-half years to be served in home detention in Ohio and the rest of his sentence suspended, pursuant

to the plea agreement. The court also directed Keeney to submit to DNA testing, to which Keeney objected. This appeal ensued.

## DISCUSSION AND DECISION

■ Keeney contends that Indiana Code Section 10–13–6–10, which requires "[a] person convicted of a felony ... after June 30, 2005, whether or not the person is sentenced to a term of imprisonment," to provide a DNA sample to the State is unconstitutional in light of the recent decision of the Supreme Court of the United States in *Samson v. California,* —— U.S. ——, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006). The State responds that *Samson* does not overrule our precedents on this issue, namely *Balding v. State,* 812 N.E.2d 169 (Ind.Ct.App.2004). We agree with the State.

Keeney's brief, discussed further below, ignores relevant Indiana case law on this issue. Specifically, in *Balding,* we stated as follows:

> The Fourth Amendment to the United States Constitution states, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." (emphasis added). The Fourth Amendment thus prohibits searches and seizures that are unreasonable. Generally, searches and seizures are unreasonable if conducted without an individualized suspicion of wrongdoing. *City of Indianapolis v. Edmond,* 531 U.S. 32, 37 [121. S.Ct. 447, 148 L.Ed.2d 333] (2000). One exception to this rule exists where suspicionless searches are designed to serve "special needs," or needs that are beyond the normal need for law enforcement. *Id.* When such special needs are alleged as justification of a suspicionless search, we must conduct a context-specific inquiry

and examine closely the competing private and public interests advanced by the parties. *Kopkey v. State,* 743 N.E.2d 331, 336–37 (Ind.Ct.App.2001), *trans. denied.*

\* \* \*

> Neither party asserts that an individualized suspicion of wrongdoing existed in this case. Therefore, the compulsory collection of DNA samples for inclusion in the Indiana DNA Database [under Ind.Code §§ 10–13–6–1 to–22] survives a Fourth Amendment challenge only if such searches serve a special need beyond the normal need for law enforcement and crime detection. We hold that they do.

*Balding,* 812 N.E.2d at 172. *See also Sharp v. State,* 835 N.E.2d 1079, 1085–86 (Ind.Ct.App.2005); *Patterson v. State,* 742 N.E.2d 4, 10–11 (Ind.Ct.App.2000), *clarified on reh'g,* 744 N.E.2d 945, *trans. denied, cert. denied,* 534 U.S. 961, 122 S.Ct. 368, 151 L.Ed.2d 279 (2001).

In concluding that Indiana Code Section 10–13–6–10, along with the rest of the Indiana DNA Database, survived the defendant's Fourth Amendment challenge, we held both that the relevant statutes went "beyond the normal need for law enforcement" and that the search required by those statutes was reasonable in light of a balance of "the public and private interests." *Id.* at 172–73. Balancing the interests under our Fourth Amendment analysis, we expressly considered the nature of the defendant's privacy interest, the character of the State's intrusion into that interest, and the governmental interest at issue. And regarding the government's interest, we stated: "the State has a substantial interest in creating a database of DNA samples of convicted offenders to assist in future criminal investigations and to use for research and other administrative purposes." *Id.* at 173.

Again, in *Balding* we upheld all of the statutes establishing Indiana's DNA Database under the "special needs" exception to the general prohibition of suspicionless searches. But in *Samson*, the Supreme Court used a general balancing test to determine whether a suspicionless search of a California parolee was permissible under the Fourth Amendment. *Samson*, 126 S.Ct. at 2196–97. Thus, Keeney maintains that *Samson* abrogated the special needs exception and, accordingly, asks that we once again review the constitutionality of the Indiana DNA Database statutes.

Although the *Samson* Court utilized a general balancing test in determining the reasonableness of a suspicionless search, it is undisputed by Keeney that the special needs test is a "more stringent ... analysis." *See State v. O'Hagen*, 189 N.J. 140, 914 A.2d 267, 277 (2007). Keeney presents no cogent reasoning to explain why, having found the relevant statutes constitutional under the more stringent special needs analysis, we should now find those statutes unconstitutional under the less stringent general balancing test. As such, Keeney's argument on appeal is waived. *See* Ind. Appellate Rule 46(A)(8)(a).

Further, even if we were to reach the constitutionality of the Indiana DNA Database under the general balancing test, Keeney has presented no argument as to why our balancing of the three salient interests in *Balding* is either in error or otherwise inapplicable. Hence, Keeney again has waived his argument. *See id.*

And insofar as Keeney asks this court to simply reweigh those interests under the general balancing test, we decline to do so. Thus, we affirm the trial court's order.

■ Unfortunately, we must call attention to the fact that the appellate attorney for Keeney has filled her brief with uncited material. Specifically, the brief's entire "Argument" section is a near-verbatim [1] replication of a recent Memorandum and Order from the United States District Court for the District of Massachusetts. *Compare* Appellant's Brief at 2–29 *with United States v. Stewart*, 468 F.Supp.2d 261, 263–82 (D.Mass.2007). Each contention in an appellate brief "must be supported by citations to the authorities ... relied on." App. R. 46(A)(8)(a). But Keeney's attorney has not cited *Stewart*, nor has she otherwise indicated to this court that she is relying on that case.

Our Supreme Court addressed a similar situation in *Frith v. State*, 263 Ind. 100, 325 N.E.2d 186, 188–89 (1975), stating:

To place all this conglomeration of uncited material in a Brief is an imposition on the Court. We do not mean to say that such material should not be used if properly identified. However, as we have said, "the great rule in drawing briefs consists in conciseness with perspicuity." *Gardner v. Stover*, (1873) 43 Ind. 356. A brief is not to be a document thrown together without either organized thought or intelligent editing on the part of the brief-writer. Inadequate briefing is not, as any thoughtful lawyer knows,

---

1. Keeney's appellate attorney has changed the defendant's name to her client's, she has changed reference to the United States government to the State, she has omitted a sentence on the federal DNA Act, she has dropped some paragraphs down to footnotes, and she has moved one paragraph up in the text. Other than those changes, however, the two documents are identical, including the District Court's reference to there being no

decisions from the Court of Appeals for the First Circuit "directly on point," *Stewart*, 468 F.Supp.2d at 268; Appellant's Brief at 10, that court's analysis that the Act in question applies to the defendant in question as a probationer rather than as a felon, and, after replacing *Stewart's* "A"-subheading with the "Argument" heading, the appellate brief begins its subheadings at "B."

helpful to either a lawyer's client or to the Court. We make this point so that when the compensation for Appellant['s] attorney is fixed some consideration may be given to the way in which the Brief in this case was prepared. *See also Gibbs v. State,* 426 N.E.2d 1150, 1158–59 (Ind.Ct.App.1981), *trans. denied.*

The importance of proper attribution cannot be understated. While lawyers and judges regularly borrow reasoning from others, both ethics and the appellate rules require that the source be given credit. Nonetheless, Keeney's appellate attorney merely transplanted the District Court's order into her brief as if it were her own work.

Further, although effective advocacy may require an attorney to ask a court to revisit a prior decision in light of new case law, again, "[i]nadequate briefing is not, as any thoughtful lawyer knows, helpful to either a lawyer's client or to the Court." *See Frith,* 325 N.E.2d at 189. Indeed, as our analysis of Keeney's appeal demonstrates, the inadequate brief here did not aid Keeney. Rather, Keeney's attorney merely incorporated the *Stewart* order and, in so doing, failed to advance any "argument ... supported by cogent reasoning" on behalf of her client. *See* App. R. 46(A)(8)(a).

We confine our criticism here to an admonishment. However, we note that it is within our authority to require Keeney's attorney to not collect a fee for her appellate services in this case, and to return any fee she may have already received to the payor with interest. *See Frith,* 325 N.E.2d at 189; *Gibbs,* 426 N.E.2d at 1159 (Sullivan, J., concurring). We also note that, while we have considered Keeney's brief to the extent possible, it was within our authority to strike the brief entirely. *See* App. R. 42. It is also within our authority to refer this matter to the Supreme Court Disciplinary Commission for investigation, as Indiana Professional Conduct Rule 1.1 requires attorneys to represent their clients competently. *See Gibbs,* 426 N.E.2d at 1159 (referring attorney to the Disciplinary Commission). Or we could have ordered Keeney's attorney to show cause, if any, why she should not be held in contempt. *See id.* (Sullivan, J., concurring). We choose, however, not to sanction Keeney's attorney beyond the reprimand within this opinion.

Affirmed.

MATHIAS, J., and BRADFORD, J., concur.