**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 03 2014, 10:11 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**ALISON L. BENJAMIN**
**PAUL G. STRACCI**
Thiros & Stracci, P.C.
Merrillville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana
Indianapolis, Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GAGE PATRICK RINGER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A04-1403-CR-129 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

INTERLOCUTORY APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Samuel L. Cappas, Judge
Cause No. 45G04-1308-FA-26

**November 3, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BRADFORD, Judge**

## CASE SUMMARY

On August 29, 2013, a grand jury indicted Appellant-Defendant Gage Patrick Ringer on charges of Class A felony rape, Class A felony criminal deviate conduct, Class B felony criminal confinement, and Class C felony criminal confinement after his ex-fiancée, B.T., reported that Ringer had, while armed with a knife, sexually assaulted her. On August 31, 2013, Ringer was arrested in connection with the above-stated charges. He was subsequently released from custody after he posted bond. On October 23, 2013, Appellee-Defendant the State of Indiana (the "State") filed a motion requesting that the trial court order Ringer to submit to a buccal swab. The trial court granted the State's motion on January 30, 2014, over Ringer's objection. The trial court, however, stayed the order to allow Ringer to pursue the instant interlocutory appeal.

Ringer contends on appeal that the trial court abused its discretion in ordering him to submit to a buccal swab. Specifically, Ringer argues that the swab would constitute an unreasonable violation of his constitutional rights against unreasonable searches and seizures. Concluding otherwise, we affirm.

## FACTS AND PROCEDURAL HISTORY

On or about April 1, 2013, B.T. reported to local law enforcement that she had been sexually assaulted by Ringer. Specifically, B.T. reported that Ringer, while armed with a knife, confined her and forced her to engage in both oral and vaginal sexual intercourse. B.T. also submitted to a sexual assault examination at a local hospital shortly after the sexual assault occurred.

2

On August 29, 2013, a grand jury indicted Ringer on charges of Class A felony rape, Class A felony criminal deviate conduct, Class B felony criminal confinement, and Class C felony criminal confinement. That same day, a warrant was issued for Ringer's arrest, and he was arrested on August 31, 2013. Ringer subsequently posted bond and was released from custody on September 16, 2013.

On October 23, 2013, the State filed a motion requesting that the trial court order Ringer to submit to a buccal swab.[1] The State sought the buccal swab in order to compare the sample with sexual assault kit evidence that had been collected from the victim in connection with the instant matter. Ringer filed an objection to the State's motion on October 30, 2013. On January 30, 2014, following a hearing, the trial court granted the State's motion and ordered Ringer to submit to a buccal swab. The trial court, however, stayed the order to allow Ringer to pursue an interlocutory appeal.

Ringer subsequently requested that the trial court certify its order for interlocutory appeal. The trial court granted Ringer's request and certified its order on March 4, 2014. Ringer then requested permission from this court to file an interlocutory appeal. On May 16, 2014, we granted Ringer's request and accepted jurisdiction over the instant interlocutory appeal.

**DISCUSSION AND DECISION**

Ringer contends that the trial court abused its discretion in ordering him to submit to a buccal swab. Specifically, Ringer argues that the trial court erroneously determined that the

---

[1] A "buccal swab" is also commonly referred to as a cheek swab.

3

buccal swab constituted a reasonable search under both the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution. The State, for its part, contends that the trial court acted within its discretion in ordering Ringer to submit to a buccal swab.

"A buccal swab is a specialized applicator with a sponge or foam tip, which is rubbed on the inside of the cheek to collect epithelial cells. This procedure is noninvasive and pain free." *Balding v. State*, 812 N.E.2d 169, 173 (Ind. Ct. App. 2004) (internal citation omitted). "Thus, the character of the intrusion into [a defendant's] privacy [is] minimal because the procedure itself [is] noninvasive and pain free." *Id.* Both the United States Supreme Court and the Indiana Supreme Court have acknowledged that although a buccal swab is relatively noninvasive, it nonetheless constitutes a "search" for the purpose of the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Indiana Constitution. *See Maryland v. King*, 133 S. Ct. 1958, 1968-69 (2013); *Garcia-Torres v. State*, 949 N.E.2d 1229, 1232 (Ind. 2011). "We review *de novo* a trial court's ruling on the constitutionality of a search." *Garcia-Torres*, 949 N.E.2d at 1232 (citing *Campos v. State*, 885 N.E.2d 590, 596 (Ind. 2008)).

### *Whether the Search Was Reasonable Under the Fourth Amendment*

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches or seizures shall not be violated." The Fourth Amendment prohibits unreasonable searches and seizures. *Burkes v. State*, 842 N.E.2d 426, 429 (Ind. Ct. App. 2006), *trans. denied*.

4

To say that the Fourth Amendment applies here is the beginning point, not the end of the analysis. "[T]he Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." [*Schmerber v. California*, 384 U.S. 757, 768 (1966).] "As the text of the Fourth Amendment indicates, the ultimate measure of the constitutionality of a governmental search is 'reasonableness.'" *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 652, 115 S. Ct. 2386, 132 L. Ed. 2d 564 (1995). In giving content to the inquiry whether an intrusion is reasonable, the Court has preferred "some quantum of individualized suspicion ... [as] a prerequisite to a constitutional search or seizure. But the Fourth Amendment imposes no irreducible requirement of such suspicion." *United States v. Martinez-Fuerte*, 428 U.S. 543, 560-561, 96 S. Ct. 3074, 49 L. Ed .2d 1116 (1976) (citation and footnote omitted).

In some circumstances, such as "[w]hen faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, the Court has found that certain general, or individual, circumstances may render a warrantless search or seizure reasonable." *Illinois v. McArthur*, 531 U.S. 326, 330, 121 S. Ct. 946, 148 L. Ed. 2d 838 (2001). Those circumstances diminish the need for a warrant, either because "the public interest is such that neither a warrant nor probable cause is required," *Maryland v. Buie*, 494 U.S. 325, 331, 110 S. Ct. 1093, 108 L. Ed. 2d 276 (1990), or because an individual is already on notice, for instance because of his employment, *see* [*Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 616 (1989)], or the conditions of his release from government custody, see *Samson v. California*, 547 U.S. 843, 126 S. Ct. 2193, 165 L. Ed. 2d 250 (2006), that some reasonable police intrusion on his privacy is to be expected. The need for a warrant is perhaps least when the search involves no discretion that could properly be limited by the "interpo[lation of] a neutral magistrate between the citizen and the law enforcement officer." *Treasury Employees v. Von Raab*, 489 U.S. 656, 667, 109 S. Ct. 1384, 103 L. Ed. 2d 685 (1989).

*King*, 133 S. Ct. at 1969-70.

While a significant government interest does not alone suffice to justify a search, the government interest must outweigh the degree to which the search invades an individual's legitimate expectations of privacy. *Id*. at 1977.

In considering those expectations … the necessary predicate of a valid arrest for a serious offense is fundamental. "Although the underlying command of

5

the Fourth Amendment is always that searches and seizures be reasonable, what is reasonable depends on the context within which a search takes place." *New Jersey v. T.L.O.*, 469 U.S. 325, 337, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985). "[T]he legitimacy of certain privacy expectations vis-á-vis the State may depend upon the individual's legal relationship with the State." *Vernonia School Dist. 47J*, 515 U.S., at 654, 115 S. Ct. 2386.

*Id*. at 1977-78.

In *King*, the United States Supreme Court held that the search effected by a buccal swab of an individual falls within the category of cases "this Court has analyzed by reference to the proposition that the 'touchtone of the Fourth Amendment is reasonableness, not individualized suspicion.'" *Id*. at 1970 (quoting *Samson*, 547 U.S. at 855 n.4).

Even if a warrant is not required, a search is not beyond Fourth Amendment scrutiny; for it must be reasonable in its scope and manner of execution. Urgent government interests are not a license for indiscriminate police behavior. To say that no warrant is required is merely to acknowledge that "rather than employing a per se rule of unreasonableness, we balance the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable." [*McArthur*, 531 U.S. at 331]. This application of "traditional standards of reasonableness" requires a court to weigh "the promotion of legitimate governmental interests" against "the degree to which [the search] intrudes upon an individual's privacy." *Wyoming v. Houghton*, 526 U.S. 295, 300, 119 S. Ct. 1297, 143 L. Ed. 2d 408 (1999).

*Id*.

The Court concluded that the taking of a buccal swab to collect an individual's DNA following a lawful arrest was reasonable under the Fourth Amendment. *Id*. at 1980. In coming to this conclusion, the Court found that forcing an individual to submit to a buccal swab after being arrested was reasonable because it served the legitimate government interest that law enforcement officers need a safe and accurate way to identify persons and possessions which they take into custody. *Id*. at 1970. The Court also found that forcing one

6

who has been lawfully arrested is reasonable because it is minimally intrusive. *Id.* at 1977-78.

In addition to the factors relating to identification, the Court held that the reasonableness inquiry into whether a warrant is necessary for an order that one submit to a buccal swab considers "two other circumstances in which the Court has held that particularized suspicion is not categorically required: 'diminished expectations of privacy [and] minimal intrusions.'" *Id.* at 1979 (citing *McArthur*, 531 U.S. at 330). With respect to the intrusion upon an individual, the Court found that the intrusion of a buccal swab to obtain a DNA sample is a minimal one. *Id.* at 1977.

> "A crucial factor in analyzing the magnitude of the intrusion ... is the extent to which the procedure may threaten the safety or health of the individual," [*Winston v. Lee*, 470 U.S. 753, 761 (1985)], and nothing suggests that a buccal swab poses any physical danger whatsoever. A brief intrusion of an [individual's] person is subject to the Fourth Amendment, but a swab of this nature does not increase the indignity already attendant to normal incidents of arrest.

*Id.* at 1979. With respect to one's expectation of privacy, the Court found that once an individual has been arrested on probable cause for a dangerous offense that could potentially require detention before trial, his expectations of privacy and freedom from police scrutiny are reduced. *Id.* at 1978.

Applying the United States Supreme Court's logic in *King* to the instant matter, we conclude that the trial court's order that Ringer submit to a buccal swab was reasonable. Ringer does not challenge the lawfulness of his arrest, which occurred after a grand jury found probable cause to indict him on charges of Class A felony rape, Class A felony

7

criminal deviate conduct, Class B felony criminal confinement, and Class C felony criminal confinement. Given the serious nature of Ringer's alleged crimes coupled with the fact that he had not yet proceeded to trial on the charges, we believe that Ringer had a diminished expectation of privacy. In light of his diminished expectation of privacy coupled with the minimal invasive nature of the buccal swab and the State's legitimate interest in continuing to investigate the offenses for which Ringer was charged, we conclude that the trial court's order that Ringer submit to a buccal swab was reasonable.

### *Whether the Search Was Reasonable Under Article I, Section 11*

Although the language of Article I, Section 11 mirrors the language of the Fourth Amendment, Indiana courts interpret and apply it independently from Fourth Amendment jurisprudence. *State v. Bulington*, 802 N.E.2d 435, 438 (Ind. 2004).

> Article I, Section 11 provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated...." The purpose of this article is to protect from unreasonable police activity those areas of life that Hoosiers regard as private. *Moran v. State*, 644 N.E.2d 536, 540 (Ind. 1994). The provision must receive a liberal construction in its application to guarantee the people against unreasonable search and seizure. *Brown v. State*, 653 N.E.2d 77, 79 (Ind. 1995). In resolving challenges asserting a Section 11 violation, courts must consider the circumstances presented in each case to determine "whether the police behavior was reasonable." *Id*. We place the burden on the State to show that under the totality of the circumstances its intrusion was reasonable. [*Bulington*, 802 N.E.2d at 438].

*State v. Quirk*, 842 N.E.2d 334, 339-40 (Ind. 2006). In determining the reasonableness of a search or seizure, courts should balance (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion and the method of the search or seizure to the extent they impose on the citizen's ordinary activities; and (3) the extent of law

8

enforcement needs. *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005).

Upon review, we conclude that the trial court's order that Ringer submit to a buccal swab was reasonable. The trial court issued its order after Ringer was lawfully arrested and indicted on charges of Class A felony rape, Class A felony criminal deviate conduct, Class B felony criminal confinement, and Class C felony criminal confinement. The degree of intrusion the buccal swab imposed on Ringer's ordinary activities was low, especially considering Ringer's diminished expectation of privacy. Further, as is stated above, we have previously determined that the character of the intrusion into an individual's privacy is minimal because a buccal swab is a noninvasive and pain-free procedure. *Balding*, 812 N.E.2d at 173. Law enforcement had a high degree of suspicion that Ringer had violated the law, the degree of intrusion was minimal, and law enforcement had a legitimate need for taking the buccal swab. *See Litchfield*, 824 N.E.2d at 361. As such, we conclude that the trial court's order that Ringer submit to a buccal swab was reasonable under Article I, Section 11.[2]

The judgment of the trial court is affirmed.

BARNES, J., and BROWN, J., concur.

---

[2] It is of note that the trial court's order was arguably the functional equivalent of a search warrant as the trial court issued the order after the grand jury had found probable cause to indict Ringer for the charged offenses. *See Wade v. State*, 490 N.E.2d 1097, 1102 (Ind. 1986) (providing that a trial court's order that an individual submit to a buccal swab was tantamount to a search warrant where the issuing court was equipped with sufficient facts to constitute probable cause). However, because we conclude that the order does not violate Ringer's rights under either the Fourth Amendment or Article I, Section 11, we need not base our conclusion on the reasoning set forth in *Wade*. Furthermore, having concluded that the trial court's order did not violate the Fourth Amendment or Article I, Section 11, we need not consider the State's alternative argument that the trial court's order was proper under the context of permissible pre-trial discovery.