## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
May 28 2015, 8:55 am

**CLERK**
of the supreme court, court of appeals and tax court

---

**APPELLANT, PRO SE**

David Pannell
Michigan City, Indiana

**ATTORNEYS FOR APPELLEE**

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

---

# I N  T H E
# COURT OF APPEALS OF INDIANA

---

David Pannell,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 28, 2015

Court of Appeals Cause No.
49A04-1308-PC-415

Appeal from the Marion Superior Court

Lower Court Cause No.
49G04-9502-PC-24360

The Honorable Lisa F. Borges, Judge

**Pyle, Judge.**

## Statement of the Case

[1] Appellant/Petitioner, David Pannell ("Pannell"), appeals the post-conviction court's denial of his petition for post-conviction relief, in which he requested

relief from his conviction for murder. Pannell's conviction was based on the murder of his wife, Leisha. On direct appeal, his appellate attorney argued that the trial court had abused its discretion in excluding testimony regarding Leisha's drug use and that Pannell's trial counsel had been ineffective for failing to submit certain evidence and explore all possible defenses. Our Indiana Supreme Court affirmed Pannell's conviction.

[2] Subsequently, Pannell filed a pro se petition for post-conviction relief, raising seventeen claims of ineffective assistance of appellate counsel, each arguing that his appellate counsel had provided ineffective assistance for failing to raise a claim of ineffective assistance of trial counsel. Pannell also raised multiple prosecutorial misconduct claims. After filing his petition, Pannell filed a motion for the trial court to issue subpoenas to his pre-trial, trial, and appellate counsel, which the trial court granted. He also filed a motion to compel discovery and a motion for the post-conviction court to issue subpoenas to his trial witnesses, both of which the post-conviction court denied. The post-conviction court then held a hearing at which Pannell's appellate attorney testified. Pannell's pre-trial and trial counsel did not appear, even though the trial court had issued subpoenas for them to appear. At the hearing, Pannell argued that the post-conviction court should re-issue the subpoenas for his pre-trial and trial counsel, but the post-conviction court ordered Pannell to submit the rest of his evidence on the petition via affidavit based on its conclusion that Pannell had not effectively questioned his appellate counsel at the hearing.

After giving Pannell ninety days to submit affidavits, the post-conviction court denied Pannell's petition.

[3] Pannell now appeals, arguing that the post-conviction court: (1) abused its discretion when it denied his post-conviction hearing motion to subpoena his pre-trial and trial counsel; (2) abused its discretion when it denied his pre-hearing motion to subpoena certain trial witnesses; (3) abused its discretion when it denied his motion to compel discovery; (4) abused its discretion when it denied his request to admit evidence during his post-conviction relief hearing; and (5) erred when it denied his petition for post-conviction relief. We find that the post-conviction court did not abuse its discretion when it refused to issue Pannell's requested subpoenas in light of Pannell's performance at his hearing and the lack of probative and relevant evidence the testimony from Pannell's trial witnesses would have added to his case. We also find that: Pannell had waived his right to discovery of the evidence he requested; the post-conviction court did not exclude evidence Pannell submitted at his post-conviction relief hearing; and the post-conviction court did not err in denying Pannell's petition for post-conviction relief.

We affirm.

## Issues

[4] 1. Whether the post-conviction court abused its discretion when it denied Pannell's post-conviction hearing motion to re-issue subpoenas ordering his pre-trial and trial counsel to testify at his post-conviction hearing.

2.  Whether the post-conviction court abused its discretion when it denied Pannell's motion to issue subpoenas ordering several of Pannell's trial witnesses to testify at his post-conviction hearing.

3.  Whether the post-conviction court abused its discretion when it denied Pannell's motion to compel discovery.

4.  Whether the post-conviction court abused its discretion when it denied Pannell's request to admit evidence during his post-conviction relief hearing.

5.  Whether the post-conviction court erred when it denied Pannell's petition for post-conviction relief.

# Facts

In Pannell's direct appeal of his conviction for murder, our Indiana Supreme Court set forth the facts of this case as follows:

> David Pannell and his wife Leisha were separated. On February 17, 1996, he visited the home where she lived with their five children. David and Leisha spent most of the afternoon and evening in her bedroom while the children played outside and in other areas of the house.
>
> That evening, after Leisha returned from a short trip to the store with some of the children to buy candy, she and David began to argue in the living room while the children watched television in her bedroom. Two of the children, then ages ten and nine, testified that they heard their father demand five dollars from Leisha, who refused, claiming she needed the money to feed the children. Shortly thereafter, they heard a door "slam open" and their mother scream. They ran to the front of the house and saw their father holding their mother down on the ground in front of the home and stabbing her with a large kitchen knife. One of the children ran outside and tried to stop him. Pannell pushed her away and continued stabbing Leisha. The children then dialed 911 and watched as Pannell stuck the knife in the ground, got into his car, and drove away.

Police found Pannell approximately one hour later after his car was involved in a single-vehicle crash some three to four miles from Leisha's home. Leisha died from stab wounds to the heart and lungs.

*Pannell v. State*, 686 N.E.2d 824, 825-26 (Ind. 1997).

[6] On February 21, 1995, the State charged Pannell with murder. Three days later, the court appointed Pannell's pre-trial counsel to represent him. This attorney completed some of the early tasks of representing Pannell, including deposing potential witnesses. However, he filed a motion to withdraw from the representation on July 6, 1995, citing a breakdown of the attorney-client relationship due to a significant difference of opinion about defense strategy and witnesses. Pannell's trial counsel then entered an appearance for Pannell and represented him throughout the remainder of his trial proceedings.

[7] The trial court held a jury trial on Pannell's charge from March 4-6, 1996. At trial, two of Pannell's daughters testified that they had seen him stab their mother, and the State presented the audio recording of the girls calling 911 to report the stabbing. On cross-examination, Pannell's trial counsel attempted to impeach the girls with inconsistent statements they had made during their depositions. These statements concerned the location of the knife used in the stabbing before it occurred; the girls' response times to hearing their parents fighting; and Pannell's reaction to one of the girls' attempts to intervene in the stabbing.

[8] In his case-in-chief, Pannell testified; he denied stabbing his wife. He claimed that she had come after him with a knife but that he had disarmed her, dropped the knife on the ground beside the house, and driven away in his car without injuring her. Pannell also tried to introduce evidence that one of his daughters had seen drug paraphernalia in her mother's room the day of the murder and that her mother had a history of drug abuse. The trial court excluded this evidence on the grounds that it was irrelevant. At the conclusion of the trial, the jury found Pannell guilty as charged, and the trial court entered judgment and sentenced him to sixty (60) years incarceration.

[9] Pannell appealed his conviction and argued that the trial court had abused its discretion in excluding the evidence of Leisha's alleged drug use because the exclusion had impacted his ability to present his defense. He also argued that his trial counsel had been ineffective for failing to present an ambulance run report that reflected the time he had been taken to the hospital after his automobile accident the night of the murder, as well as for allegedly failing to explore all potential defenses. Our Indiana Supreme Court affirmed Pannell's conviction, holding that he had not raised a defense placing Leisha's drug use at issue and that he had not demonstrated that his trial counsel was ineffective. *Id.* at 826. With respect to the ineffective assistance of counsel claim, the trial court noted that evidence of the time Pannell had arrived at the hospital bore "no discernible relation to the issues at trial." *Id.*

[10] Eight years later, on August 29, 2005, Pannell filed a pro se petition for post-conviction relief, which he later withdrew without prejudice. On June 13,

2011, six years after his first petition and fourteen years after his appeal, he re-filed his petition for post-conviction relief, again pro se.[1] In this petition, Pannell claimed that his appellate counsel had been ineffective for failing to raise seventeen different claims of ineffective assistance of his trial and pre-trial counsel on direct appeal. Pannell also raised several prosecutorial misconduct claims and argued that his appellate counsel had been ineffective for failing to raise the same prosecutorial misconduct claims on appeal.

On June 23, 2011, Pannell filed a motion to compel discovery, requesting that the post-conviction court compel the State to produce a copy of the taped 911 call admitted at trial and a copy of the police investigation report from his automobile accident the night of the murder. Four days later, he requested the post-conviction court to issue subpoenas for: (1) Detective David E. Phillips ("Detective Phillips") of the Indianapolis Police Department, a detective who had responded to the scene of the stabbing; (2) his trial prosecutor; (3) his pre-trial counsel; (4) his trial counsel; and (5) his appellate counsel. That same day, the post-conviction court granted Pannell's motion to issue subpoenas requiring Pannell's pre-trial, trial, and appellate counsel to appear but denied his request to issue subpoenas to his trial prosecutor and to Detective Phillips. In a separate order issued the same day, the post-conviction court directed the State to file a response to Pannell's discovery request within thirty days.

---

[1] Pannell later amended his petition two times.

[12]   On August 15, 2011, Pannell filed another motion requesting the post-conviction court to issue subpoenas to: (1) Officer Anthony Kelly ("Officer Kelly"), the police officer who had first responded to the scene of the murder; (2) David Evans ("Evans"), the supervisor of the Marion County Sheriff Department's communications center; (3) Detective Phillips; (4) Officer Frank Wefler ("Officer Wefler"), the officer who had responded to the scene of Pannell's automobile accident; (5) one of Pannell's daughters who had testified at trial ("daughter one"); (6) another of Pannell's daughters who had testified at trial ("daughter two"); (7) Pannell's trial court prosecutor; and (8) the crime lab technician who had responded to the scene of Pannell's automobile accident. The next day, Pannell filed another motion to compel discovery, again requesting that the post-conviction court compel discovery of the tape of the 911 call and a copy of the police investigation report from his automobile accident. On August 24, 2011, the post-conviction court denied both motions.

[13]   On March 9, 2012, Pannell filed a motion for partial summary disposition under Ind. Post-Conviction Rule 1(4)(g) with respect to his prosecutorial misconduct claims. The post-conviction court did not rule on Pannell's motion because it held a hearing on Pannell's petition for post-conviction relief four days later on March 13, 2012. Pannell's appellate counsel appeared at the hearing, but his pre-trial and trial counsel did not.

[14]   During his hearing, Pannell questioned his appellate counsel about her decisions regarding his case on appeal, but she explained that due to the passage of fifteen years, she could not recall many of the specifics of his case.

Throughout the examination, the post-conviction court repeatedly expressed frustration that Pannell was not effectively questioning his counsel. At one point, the court stated, "I've asked you a few times to get to the point and you just seem to be just not really getting to the point." (Tr. 43). Another time, the court commented that:

> it just seems to me that this afternoon has been an exercise in educating—attempting to educate you on the procedure that we use in post-conviction relief and we keep going through questions that, in the Court's view, are not relevant to any claims you're trying to raise.

[15] (Tr. 48). As a result, the post-conviction court decided to release Pannell's appellate counsel from her subpoena and ordered Pannell to submit the remainder of his evidence, including testimony from his pre-trial and trial counsel, by affidavit.

[16] Before releasing Pannell's appellate counsel from her subpoena, however, the post-conviction court let the State cross-examine her. She testified on cross-examination that her standard procedure when doing criminal appellate work was to obtain and read a copy of the record, take notes about viable arguments or issues to present for appellate review "based on [her] experience and understanding of the law," research the law, prepare a brief, and then file the brief. (Tr. 50). She further stated that she would not have reviewed depositions or police reports outside of the record unless the appellant had indicated that they were relevant. With respect to Pannell's case, she stated that she did not remember any meritorious issues that she did not raise on appeal.

[17] Pannell requested affidavits from his pre-trial counsel and trial counsel but did not receive them within the ninety days the post-conviction court had allocated for him to submit affidavits.[2] Subsequently, on August 5, 2012, the post-conviction court denied Pannell's petition for post-conviction relief. The next day, on August 6, 2012, Pannell's trial counsel filed an affidavit with the post-conviction court.[3] He stated that he did not recall the specifics of his representation of Pannell because of the passage of time, but he stated that he would have zealously represented Pannell at trial, filed appropriate motions, and performed an appropriate investigation of his case. Pannell now appeals the post-conviction court's denial of his petition.

## Decision

[18] On appeal, Pannell raises several issues, including that the post-conviction court: (1) abused its discretion when it denied his post-conviction hearing motion to re-issue subpoenas to his pre-trial counsel and trial counsel; (2) abused its discretion when it denied his motion to subpoena his trial witnesses; (3) abused its discretion when it denied his motion to compel discovery of the 911 tape and automobile accident police report; (4) abused its discretion when it

---

[2] Pannell tendered a letter that his pre-trial counsel had written in response to Pannell's apparent service of interrogatories upon his pre-trial counsel. Counsel noted that the use of interrogatories was limited to parties in an action and asked for additional authority in support of Pannell's request. As a result, Pannell did not submit an affidavit from his pre-trial counsel.

[3] Even though this affidavit was not filed with the court until August 6, 2012, it is apparent the post-conviction court considered it before deciding Pannell's case because the court discusses the affidavit in its order denying Pannell's petition.

denied his request to admit evidence during his post-conviction relief hearing; and (5) erred in denying his petition for post-conviction relief. We will address each of these arguments in turn.

[19] First, however, we note that post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. *Allen v. State*, 791 N.E.2d 748, 752 (Ind. Ct. App. 2003), *trans. denied*. Such proceedings are not "super appeals" through which convicted persons can raise issues that they failed to raise at trial or on direct appeal. *Id.* Post-conviction proceedings are civil in nature, and petitioners bear the burden of proving their grounds for relief by a preponderance of the evidence. *Id.*

[20] When a petitioner appeals the denial of post-conviction relief, he appeals from a negative judgment. *Id.* Consequently, we may not reverse the judgment of the post-conviction court unless the petitioner demonstrates that the evidence "'as a whole, leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court.'" *Id.* (quoting *Curry v. State*, 674 N.E.2d 160, 161 (Ind. 1996)). We accept the post-conviction court's findings of fact unless they are clearly erroneous, but we do not give deference to the court's conclusions of law. *Id.*

[21] Further, we must note that, although Pannell is proceeding pro se and lacks legal training, we hold pro se litigants to the same standards as trained counsel. *Whatley v. State*, 937 N.E.2d 1238, 1240 (Ind. Ct. App. 2010).

### 1. Subpoena of Pre-Trial and Trial Counsel

[22] First, Pannell argues that the post-conviction court abused its discretion when it denied his request to re-issue subpoenas to his pre-trial and trial counsel. As stated above, the post-conviction court initially granted Pannell's request to subpoena both attorneys. However, at his post-conviction hearing, Pannell asked the post-conviction court if it could re-issue the subpoenas, and the post-conviction court commented that it did not "know that [Pannell] [had] filed an affidavit . . . as the rules for post[-]conviction relief require[d] to have a subpoena issued." (Tr. 57). Then, after Pannell's examination of his appellate counsel at that hearing, the post-conviction court determined that it would be inappropriate to subpoena either Pannell's pre-trial or trial counsel and ordered Pannell to submit testimony from both counsel through affidavit.

[23] On appeal, Pannell argues that the post-conviction court abused its discretion when it denied his request to subpoena his counsel because the court was wrong when it found that he had not filed an affidavit in compliance with the post-conviction rules. In support of this argument, he notes that the court originally granted his motion. Alternately, Pannell argues that once a post-conviction court has issued a subpoena for a witness, as it did before Pannell's hearing here, it is required to let that witness testify at a hearing.

[24] Both of these arguments depend on our interpretation of Ind. Post-Conviction Rule 1(9), which states:

> If the pro se petitioner requests issuance of subpoenas for witnesses at an evidentiary hearing, the petitioner shall

specifically state by affidavit the reason the witness' testimony is required and the substance of the witness' expected testimony. If the court finds the witness' testimony would be relevant and probative, the court shall order that the subpoena be issued. If the court finds the proposed witness' testimony is not relevant and probative, it shall enter a finding on the record and refuse to issue the subpoena.

Under the post-conviction rules, the post-conviction court has the discretion to determine whether to grant or deny the petitioner's request for a subpoena. *Allen v. State*, 791 N.E.2d 748, 756 (Ind. Ct. App. 2003), *trans. denied.* We will find that a court has abused this discretion if its decision is against the logic and effect of the facts and circumstances before it. *Id.*

[25] With respect to Pannell's first argument, Pannell is correct that the post-conviction court originally granted his motion to subpoena his pre-trial and trial counsel, so he is apparently also correct that the post-conviction court originally concluded that he had complied with Post-Conviction Rule 1(9). The post-conviction court could not have issued the subpoenas unless Pannell had submitted an affidavit with his motion. *See* P-C.R. 1(9)(b).

[26] However, we disagree with Pannell's argument that, because the post-conviction court initially granted his motion, the court was indefinitely required to let his pre-trial and trial counsel testify at a hearing. As stated above, a post-conviction court has discretion in determining whether it should issue a subpoena for a pro se petitioner's requested witness. *Allen*, 791 N.E.2d at 756. The rules do not state that the post-conviction court loses its discretion to

determine whether to re-issue a subpoena after issuing the subpoena once. *See* P-C.R. 1(9)(b). Even if the question here concerned a modification of a decision to issue a subpoena rather than a decision to re-issue a subpoena, the post-conviction court's discretion would be illusory if it could not modify a previous order.[4]

[27] In addition, in order to subpoena Pannell's pre-trial and trial counsel to testify, the post-conviction court here would have had to schedule another hearing because neither counsel was present at Pannell's March 13, 2012 post-conviction hearing. We held in *Smith v. State*, 822 N.E.2d 193, 201 (Ind. Ct. App. 2005), *trans. denied*, that the decision about whether or not to hold a hearing is "best left to the [post-conviction] court's discretion." Thus, the post-conviction court also had the discretion to refuse to hold an additional hearing at which Pannell's pre-trial and trial counsel could testify. As the post-conviction court indicated at Pannell's first hearing, Pannell did not effectively question his appellate counsel or ask questions relevant to the issues he had raised. Accordingly, we do not find that the post-conviction court abused its discretion in deciding to deny Pannell's request to re-issue subpoenas to his pre-

---

[4] Notably, it is a "well-settled rule that a trial court has inherent power to reconsider, vacate, or modify any previous order so long as the case has not proceeded to final judgment[.]" *Hubbard v. Hubbard*, 690 N.E.2d 1219, 1221 (Ind. Ct. App. 1998). Although this common law precedent has never been addressed in the post-conviction context, it is logical that a post-conviction court would have the same inherent powers necessary to exercise its authority and discretion.

trial and trial counsel, especially when no additional hearing was going to be held.

### 2. Subpoena of Trial Witnesses

[28] Pannell also argues that the post-conviction court abused its discretion when it denied his August 15, 2011 motion requesting the post-conviction court to issue subpoenas for several of the people who had been witnesses at his trial, including Officer Kelly; Evans; Detective Phillips; Officer Wefler; Pannell's two daughters; the trial court prosecutor; and the crime lab technician who had responded to the scene of Pannell's automobile accident. Pannell cites Post-Conviction Rule 1 again, which states:

> If the pro se petitioner requests issuance of subpoenas for witnesses at an evidentiary hearing, the petitioner shall specifically state by affidavit the reason the witness' testimony is required and the substance of the witness' expected testimony. If the court finds the witness' testimony would be relevant and probative, the court shall order that the subpoena be issued. *If the court finds the proposed witness' testimony is not relevant and probative, it shall enter a finding on the record and refuse to issue the subpoena*.

[29] P-C.R. 1(9)(b) (emphasis added). Because, here, the post-conviction court stamped "denied" on his motion but did not explain its reason for denying the motion, Pannell argues that the court abused its discretion because it did not "enter a finding on the record" before refusing to issue his requested subpoenas. P-C.R. 1(9)(b). He also argues that the affidavits he submitted demonstrated that the witnesses' expected testimonies were relevant and probative to his post-conviction arguments. He notes that the post-conviction rules use the

mandatory language "shall," in the statement: "If the court finds the witness' testimony would be relevant and probative, the court *shall* order that the subpoena be issued" and asserts that as a result of this language and the fact that the witnesses' expected testimonies were relevant and probative, the post-conviction court was required to issue his requested subpoenas. P-C.R. 1(9)(b) (emphasis added).

[30] As Pannell argues, the post-conviction court was required to enter a finding on the record before denying his motion. P-C.R. 1(9)(b). However, we need not determine whether the post-conviction court's "denied" stamp qualified as a finding because, even if it did not, we conclude that it is not reversible error. The post-conviction court's denial was based on a paper record—Pannell's affidavits and the record—and we will not find that a failure to enter specific findings is reversible error when the issues are sufficiently presented for review and addressed by the parties. *See Jackson v. State*, 676 N.E.2d 745, 750 (Ind. Ct. App. 1997) (stating that a failure to include specific findings of fact and conclusions of law in a ruling on a petition for post-conviction relief is not a reversible error), *trans. denied*; *see also Ratliff v. State*, 596 N.E.2d 241, 244 (Ind. Ct. App. 1992) (acknowledging that Post-Conviction Rule 1(6) provides that: "The [post-conviction] court shall make specific findings of fact and conclusions of law on all issues presented, whether or not a hearing is held," but nevertheless holding that it was not reversible error that the court had not made specific findings and conclusions because the issue was easily reviewable), *reh'g denied*, *trans. denied*.

[31] Here, the facts in the record are sufficient for us to address Pannell's arguments because we may conclude from the face of Pannell's motion that the testimony he expected from his requested witnesses would not have been relevant or probative to his post-conviction ineffective assistance of counsel or prosecutorial misconduct claims and, therefore, the post-conviction court was not required to issue his subpoena requests. As a result, the post-conviction court did not abuse its discretion, and the court's failure to enter findings before denying the subpoenas was not a reversible error.

[32] With respect to his first requested witness, Officer Kelly, Pannell stated that he expected Officer Kelly to testify at the hearing that he had arrived at the scene of the stabbing at 11:27 p.m. and recorded the time of the stabbing as occurring around 11:10 p.m. based on Pannell's daughter's statement that the incident had happened fifteen minutes earlier. Pannell claimed that this testimony was necessary to prove two of his ineffective assistance of counsel claims, but we find that the expected testimony is identical to Officer Kelly's trial testimony and would not have added any probative value to the hearing as it is already a part of the record. *Brim v. State*, 624 N.E.2d 27, 35 (Ind. Ct. App. 1993) (noting that the probative value of evidence depends on its tendency to prove any disputed fact in issue), *trans. denied.* Therefore, we conclude that the post-conviction court was not required to issue a subpoena to Officer Kelly.

[33] With respect to his second requested witness, Pannell included four pages in his motion documenting Detective Phillips' expected testimony, which again consisted primarily of testimony and facts already in the record. Among other

evidence, this expected testimony included Detective Phillips' testimony at trial that Pannell's daughter had told him that Pannell had killed her mother. Pannell claimed that this expected testimony would prove that his appellate counsel was ineffective for failing to raise that his trial counsel: (1) should have challenged Detective Phillips' probable cause to arrest him; (2) should have filed a motion to suppress evidence obtained incident to his arrest on the basis that there was no probable cause for the arrest; and (3) should have argued that Detective Phillips' probable cause affidavit contained knowing and deliberate false statements. Pannell also claimed that this testimony would prove that his trial prosecutor had committed misconduct by intentionally soliciting the testimony from Detective Phillips concerning Pannell's daughter's statements about the stabbing and that his appellate counsel had been ineffective for failing to argue that his trial counsel had been ineffective for failing to raise this prosecutorial misconduct claim.

[34]    Contrary to Pannell's arguments, this expected testimony would not have been at all relevant or probative to prove his claims. Testimony that Pannell's daughters told Detective Phillips that Pannell had stabbed their mother would have been evidence that Detective Phillips did have probable cause to arrest Pannell, not that he lacked probable cause. *See Hamlet v. State*, 490 N.E.2d 715, 719 (Ind. 1986) (holding that identification of a perpetrator of a crime by eyewitnesses to the crime may establish sufficient probable cause to arrest the suspect). Pannell also failed to specify which portions of the probable cause affidavit he thought were false. Nothing in Detective Phillips' expected

testimony supported that conclusion because the expected testimony was consistent with Detective Phillips' trial testimony. Further, since none of the expected testimony would have been relevant to prove that Detective Phillips testified falsely at trial, none of it would have been relevant to prove that the trial prosecutor knowingly solicited false testimony from Detective Phillips, either. In sum, since this testimony would not have produced relevant or probative evidence regarding any of Pannell's claims, the post-conviction court was not required to issue the subpoena.

[35] With respect to his third requested witness, Pannell averred that he expected Officer Wefler to testify that he had received a 911 call reporting Pannell's automobile accident at 11:39 p.m. on the night of the murder, rather than at 1:00 a.m., which is the time Officer Wefler identified at trial. Pannell also expected Officer Wefler to admit that he did not file an automobile accident report and that he was not an automobile accident expert.[5] Pannell argued that this testimony would prove that his appellate counsel had provided ineffective assistance by failing to raise that his trial counsel should have argued that: (1) Pannell had an alibi to the stabbing because he could not have stabbed his wife, driven to his home to change clothes, gotten rid of his bloody clothes, and

---

[5] In his motion, Pannell actually states that he expects Officer Wefler to testify that he is not an "Accident Investigation Car[,]" but we assume he means accident investigation expert based on the context. (App. 313).

driven to the scene of the accident in "[fourteen]" minutes;[6] (2) Officer Wefler deliberately and intentionally failed to file an accident investigation report for Pannell's automobile accident and thereby deprived Pannell of exculpatory and impeaching evidence; (3) Officer Wefler was not an automobile accident expert and should not have qualified as an expert when he testified that he could not find a cause for Pannell's accident; (4) Officer Wefler committed perjury when he testified that he was called to the scene at approximately 1 a.m.; and (5) the prosecutor committed prosecutorial misconduct by allegedly soliciting this false testimony from Officer Wefler. (App. 313). In addition, Pannell argued that Officer Wefler's expected testimony would support his freestanding prosecutorial misconduct claim.

[36] Many of these arguments relate to Pannell's appellate counsel's decisions concerning what issues to raise on appeal, and we are highly deferential to such decisions. *Graham v. State*, 941 N.E.2d 1091, 1099 (Ind. Ct. App. 2011), *affirmed on reh'g*. In evaluating a claim that an appellate attorney was ineffective for failing to raise certain issues on appeal, we must determine (1) whether an unraised issue was significant and obvious from the face of the record; and (2) whether an unraised issue was "'clearly stronger'" than the raised issue or issues. *Id.* (quoting *Fisher v. State*, 810 N.E.2d 674, 677 (Ind. 2004)). Counsel is

---

[6] Pannell argues that the time difference between the stabbing and his accident was only fourteen minutes, but even if we take Officer Wefler's expected testimony as true, the difference between 11:10 p.m. and 11:39 p.m. is twenty-nine minutes.

deficient only if he or she failed to present a significant and obvious issue for reasons that cannot be explained by any strategic decision. *Id.*

[37] Based on this standard, we conclude that the post-conviction court was not required to issue a subpoena to Officer Wefler. Pannell's affidavit arguments (1), (2), (4), and (5) are all based on Pannell's claim that Officer Wefler actually responded to the scene of Pannell's accident at 11:39 p.m. rather than 1 a.m. as he testified. However, there is no suggestion of that possibility in the record. Accordingly, even if we accept Pannell's speculations as true, Officer Wefler's expected testimony would not be relevant to Pannell's ineffective assistance of appellate counsel claims, because these unraised issues were not "significant and obvious"—or even present—in the record, and Pannell's appellate counsel could not have been ineffective for failing to raise them. *See id.*

[38] As for Pannell's argument (3) that Officer Wefler was not an automobile accident expert and should not have qualified as an expert when he testified that he could not find a cause for Pannell's accident, there is no indication in the record that the State qualified Officer Wefler as an expert. Instead, the officer merely testified to his conclusions based upon his observations and experience, which included investigating over 100 automobile accidents. As this type of testimony is permissible, *see Davis v. State*, 791 N.E.2d 266, 269 (Ind. Ct. App. 2003) (allowing a police officer's testimony based on his experience as a police officer and his perceptions), *reh'g denied*, *trans. denied*, it would not have been a strong issue for Pannell's appellate counsel to raise on appeal, and his appellate counsel would not have been considered ineffective for failing to raise

it. *See Graham,* 941 N.E.2d 1099. Accordingly, Officer Wefler's expected testimony would not have been relevant or probative to Pannell's ineffective assistance of counsel claims, and the post-conviction court was not required to issue a subpoena for him to testify.

[39] With respect to Pannell's fourth requested witness, daughter one, Pannell included three and a half pages of testimony he expected from her at his hearing, including excerpts taken from her voluntary interview with the police the night of the stabbing; her deposition testimony; and her trial testimony. Neither the voluntary statement nor the deposition were admitted into evidence at trial, but both were discussed at trial. In daughter one's voluntary statement the night of the murder, she said that she heard her parents arguing and ran out into the living room. At that point, she saw her father strike her mother, push her mother out the front door, retrieve a knife from a table inside the residence, and begin stabbing her mother. She said that when she tried to intervene, her father hit her with the knife. In contrast, at her deposition, she said that she ran out into the living room when she heard the front door slam and her mother screaming. When she ran out, she saw her father stabbing her mother, although she did not know how he had gotten the knife from the table. Then, she said that when she tried to intervene, her father pushed her against a fence. Finally, at trial, her testimony was substantially similar to her deposition testimony, except that she said she waited a few minutes after hearing the front door slam before running into the living room.

[40] In his motion requesting a subpoena, Pannell argued that he expected daughter one to verify at his hearing that she had previously made these inconsistent statements. He asserted that this testimony would demonstrate that his daughter had deliberately lied to the police during her voluntary interview, had later recanted her voluntary interview statements during her deposition, and had then committed perjury at trial. Thus, he argued that the expected testimony was relevant to prove that his trial counsel had been ineffective for failing to raise these issues and that, based on the same premise, his appellate counsel had been ineffective for failing to argue that his trial counsel was ineffective.

[41] Contrary to Pannell's contentions, his trial counsel did cross-examine his daughter about her inconsistent statements at trial in an attempt to impeach her. Therefore, all of these inconsistencies are in the record, and Pannell's daughter's testimony at the post-conviction hearing would not have added any relevant or probative evidence concerning Pannell's ineffective assistance of counsel claims. Thus, the post-conviction court was not required to issue a subpoena to daughter one.

[42] Next, Pannell included a description of the testimony he expected from his second daughter who had testified at his trial, daughter two. This description included excerpts of her deposition and trial testimonies, which he argued would prove that this second daughter had also committed perjury at trial, that his trial counsel had been ineffective for failing to object to the perjury, and that his appellate counsel had been ineffective for failing to raise an ineffective

assistance of counsel claim against the trial counsel on the same basis. However, as in the case of daughter one, Pannell's trial counsel did attempt to impeach daughter two's testimony at trial with her inconsistent deposition testimony. Therefore, the testimony Pannell expected from daughter two at the post-conviction hearing would not have added any relevant or probative evidence to the record, and the post-conviction court was not required to issue a subpoena for her to testify.

[43] The sixth witness Pannell requested was his trial prosecutor. He argued that the trial prosecutor's testimony at the hearing was necessary to prove that she had received a copy of daughter one's voluntary statement from the night of the murder and, therefore, committed misconduct because she failed to inform the trial court that the daughter had supposedly recanted her voluntary statement to the police and also because she had failed to correct the daughter's trial testimony.

[44] We conclude that providing proof that the trial prosecutor knew about Pannell's daughter would not have been relevant or probative for his ineffective assistance of appellate counsel claim. As stated above, in order to prove that an appellate counsel was ineffective for failing to raise an issue, a petitioner must prove that the issue was stronger than the ones the appellate counsel did raise. *Id.* Our Indiana Supreme Court has previously held that evidence of a witness's perjury, where the witness was already impeached by inconsistent statements at trial, will not warrant a new trial on appeal. *See Downs v. State*, 482 N.E.2d 716, 719 (Ind. 1985) (additionally noting that, "Despite the greater impeachment power

of a perjury conviction, it is still merely impeaching"). Accordingly, even if Pannell's appellate counsel had raised an ineffective assistance of trial counsel claim arguing that Pannell's trial counsel had failed to prove the prosecutor's misconduct in soliciting perjured testimony, evidence that the prosecutor had allowed perjured testimony at trial would not have warranted a new trial because Pannell's trial counsel had already impeached Pannell's daughter with her inconsistent statements. Since this argument would not have altered Pannell's conviction, it could not have been stronger than the issues his appellate counsel did raise. Therefore, evidence of the prosecutor's knowledge of the inconsistent statements would not have been probative for Pannell's ineffective assistance of counsel claims. *See Graham*, 941 N.E.2d at 1099.

[45] The seventh witness Pannell requested was the crime scene technician who took evidence from the scene of the stabbing and the scene of his automobile accident. He argued that the technician's testimony was necessary because he expected the technician to testify that: (1) he had examined the house's front door and screen door and found no damages indicating that it had been slammed or kicked open; and (2) he did not have a search warrant to search Pannell's car and seize evidence from it. Pannell argued that this testimony was necessary to prove that his appellate counsel had been ineffective for failing to raise a claim that his trial counsel had been ineffective for: (1) failing to argue that the State had presented false evidence that the door had slammed open; (2) failing to argue that the crime scene technician had violated Pannell's federal and state constitutional rights to be free from unreasonable search and

seizure; (3) failing to file a motion to suppress the evidence seized from the car; and (4) failing to object to the admission of the evidence at trial.

[46] We do not find that the crime scene technician's testimony would have been relevant or probative to Pannell's ineffective assistance of appellate counsel claims because the issue of whether the door was slammed was not stronger than the issues raised. At most, it would have supported Pannell's impeachment of his daughters' testimonies, but, as we stated above, that argument would not have warranted a new trial. *See Downs*, 482 N.E.2d at 719. In addition, there is no evidence in the record to support Pannell's insinuation that the crime scene technician did not have a warrant to search Pannell's automobile. "[I]n elaborating the right to effective assistance of appellate counsel, the Supreme Court of the United States has never suggested that counsel must look outside the record for possible claims of error for the performance to be constitutionally effective." *Woods v. State*, 701 N.E.2d 1208, 1221 (Ind. 1998), *reh' denied*, *cert. denied.* Therefore, proof that the crime scene technician did not have a warrant would not have been relevant or probative to prove Pannell's ineffective assistance of counsel claims, and the post-conviction court was not required to issue a subpoena for the technician to testify.

[47] Finally, Pannell requested the post-conviction court to issue a subpoena for Evans, the supervisor of the Marion County Sheriff's Department's communication center. He claimed that Evans' testimony was necessary because he expected Evans to testify that he did a search for calls coming into the 911 system the night of the stabbing and prepared a worksheet listing all of

the calls. Pannell claimed that this testimony would prove that his trial counsel had been ineffective—and his appellate counsel had been ineffective for failing to raise this ineffective assistance of trial counsel claim—for: (1) failing to argue that the police were aware of several additional eyewitness who had called the 911 system and did not provide that information to Pannell even though it could have provided him with exculpatory evidence; and (2) failing to properly investigate the scene of the crime to identify additional witness who could provide exculpatory information. Pannell also argued that the prosecutor committed misconduct by denying him the information about these alleged additional witnesses, and his appellate counsel was accordingly ineffective for failing to raise this prosecutorial misconduct claim.

[48] We do not find these arguments persuasive, first, because the State discussed at trial the fact that multiple people had called 911 about the stabbing and also played the additional recordings of the 911 calls to the jury. Thus, there was no indication that the State had withheld this information from Pannell or that the prosecutor had committed misconduct. Likewise, Pannell's appellate counsel was not ineffective for failing to raise these claims. *See Woods*, 701 N.E.2d at 1221 (noting that appellate counsel is not required to look outside of the record for claims of error). In light of the fact that Evans' expected testimony would not have been probative or relevant to any of these claims, the post-conviction court was not required to issue a subpoena for him to testify.

[49] In sum, as we have found that none of the witnesses whom Pannell requested the post-conviction court to subpoena would have provided relevant or

probative evidence in his post-conviction hearing. As a result, the post-conviction court did not abuse its discretion in denying his request to issue the subpoenas. Further, because we have been able to determine on the face of Pannell's motion that the potential witnesses would not have provided relevant or probative evidence, it also was not a reversible error for the post-conviction court to fail to enter findings before denying the request to issue the subpoenas.

### 3. Motion to Compel Discovery

Next, Pannell challenges the post-conviction court's denial of his pre-trial motion to compel discovery of the 911 operator tape from the night of the murder, as well as the police department's accident report concerning his automobile accident. He argues that, as this evidence was not privileged, the post-conviction court abused its discretion by not compelling the State to produce it.

Trial and post-conviction proceedings are governed by the same rules "'applicable in civil proceedings including pre-trial and discovery procedures.'" *Wilkes v. State*, 984 N.E.2d 1236, 1251 (Ind. 2013) (quoting P-C.R. 1(5)). Trial and post-conviction courts are accorded broad discretion in ruling on discovery matters, and we will affirm their determinations absent a showing of clear error and resulting prejudice. *Id.*

Although the post-conviction rules provide for discovery, a post-conviction proceeding is not a normal civil action. *Sewell v. State*, 592 N.E.2d 705, 707 (Ind. Ct. App. 1992), *trans. denied.* It is a special quasi-civil remedy designed for

the presentation of errors unknown or unavailable at the time of trial or direct appeal. *Id.* Because post-conviction proceedings take place after trial or a guilty plea hearing, the convicted individual typically has discovered particular items of State evidence or foregone the opportunity to do so. *Id.* Discovery is not required under the due process clause of the Constitution; therefore, a defendant may waive pre-trial discovery rights by failing to exercise them. *Id.* A second opportunity to discover the same evidence will typically be precluded. *Id.*

[53] Although Pannell's pre-trial discovery requests are not a part of the record, it is clear that both of the items he requested in his post-conviction motion to compel discovery were items that he could have discovered prior to his trial. In fact, the 911 operator tape was admitted at trial and is a part of the record. As a result, we conclude that Pannell waived his discovery rights by failing to exercise them at trial, and the post-conviction court did not abuse its discretion when it denied Pannell's motion to compel discovery.

### 4. Exclusion of Evidence

[54] Pannell also contends that the post-conviction court abused its discretion when it excluded evidence he attempted to admit at his post-conviction hearing. However, Pannell does not identify which evidence he thinks the post-conviction court excluded, and we do not find that the post-conviction court excluded any evidence.

[55] During his hearing, Pannell attempted to admit the appellant's brief from his appeal. The State objected to this admission. It argued that Pannell had not established a foundation for the brief's reliability, which was questionable because it looked like there was handwriting in the back of the brief. To resolve this issue, the post-conviction court told Pannell that it would order the State to obtain the appellant's brief as part of the official record and would examine the brief before ruling on Pannell's petition. Pannell did not object to this suggestion and continued with his examination of his appellate counsel.

[56] Later during the hearing, Pannell attempted to admit a photocopy of Officer Wefler's trial testimony. The State objected on the grounds that the photocopy was not certified. Instead, Pannell agreed to use the document to refresh his appellate counsel's memory. At the end of the hearing, the post-conviction court told Pannell that if he had "additional evidence that [he] want[ed] to present[,] it [could] be presented in the form of an affidavit." (Tr. 56).

[57] In light of this record of the hearing, we conclude that the post-conviction court did not exclude evidence that Pannell attempted to admit. The court told Pannell that it would order his first submitted exhibit, his appellant's brief, included in the record. Officer Wefler's trial testimony was already a part of the record, too. Regardless, the post-conviction court gave Pannell the opportunity to present any evidence by affidavit, as allowed by P-C.R. 1(9)(b), and Pannell did not do so.

## 5. Denial of Petition

[58] Finally, we consolidate several of Pannell's remaining arguments into one question of whether the post-conviction court erred in denying his petition for post-conviction relief. First, Pannell asserts that the post-conviction court erred when it determined that his free-standing prosecutorial misconduct claims were waived, and, second, he asserts that the post-conviction court erred because it did not find that his appellate counsel had provided ineffective assistance. We will address each of these issues in turn.

### A. Prosecutorial Misconduct

[59] In his petition for post-conviction relief, Pannell argued that his prosecutor committed misconduct by soliciting false testimony from daughter one, daughter two, Detective Phillips, and Officer Wefler. Pannell also asserted that the prosecutor knowingly and intentionally withheld the police accident report from his automobile accident. His arguments regarding daughter one, daughter two, and Detective Phillips are based on the alleged inconsistencies between the witnesses' trial testimonies, depositions, and statements, and his arguments regarding Officer Wefler and the accident report are based on speculation. The post-conviction court concluded that all of Pannell's prosecutorial misconduct arguments were free-standing claims that he had waived for failing to raise them in his direct appeal. Pannell now disputes that conclusion, asserting that he did not waive the claims because they were based on discoveries he made after his trial and direct appeal.

On post-conviction review, aside from claims of ineffective assistance of counsel, a petitioner may only raise issues that were unknown and unavailable at the time of the original trial or direct appeal. *Stephenson v. State*, 864 N.E.2d 1022. 1028 (Ind. 2007). First, we must note that, because Pannell's claims that the prosecutor solicited perjury are based on pre-trial and trial testimony, they were known and available at the time of the original trial and direct appeal. Therefore, the post-conviction court did not err in determining that Pannell had waived those issues. *See Perryman v. State*, 13 N.E.3d 923, 938 (Ind. Ct. App. 2014) (holding that a petitioner for post-conviction relief waives issues known at the time of the original trial or available on direct appeal), *trans. denied.* As for Pannell's remaining prosecutorial misconduct claims, he speculates that Officer Wefler was actually dispatched to the scene of Pannell's automobile accident at 11:40 p.m. the night of the stabbing rather than 1:00 a.m., and that Officer Wefler therefore testified falsely. Second, he argues that a police accident report existed and that the prosecutor withheld the report from him. However, because he has not provided evidence to support either of these prosecutorial misconduct claims, we conclude that the post-conviction court did not err in concluding they were waived.

### B. Ineffective Assistance of Appellate Counsel

Finally, Pannell argues that the post-conviction court erred in concluding that his appellate counsel had provided effective assistance. He claims that his appellate counsel was ineffective for failing to raise several issues that he contends were obvious in the record and much stronger than the issues that she

did raise. Specifically, he says that she should have argued that his pre-trial and/or trial counsel were ineffective for: (1) failing to conduct an adequate direct examination of daughter one and to object to the prosecutor's cross-examination of daughter one during her deposition; (2) failing to file a motion to suppress the evidence obtained incident to Pannell's arrest, or to object to the admission of that evidence at trial; (3) failing to file a motion for a "Franks Hearing" based on Detective Phillips' alleged false statements in the probable cause affidavit; (4) failing to investigate and interview potential witnesses who lived near the crime scene; (5) conceding Pannell's guilt during voir dire and opening argument; (6) failing to impeach the testimonies of Pannell's daughters with prior inconsistent statements; (7) failing to object that the prosecutor had failed to lay a proper foundation for Officer Wefler's testimony regarding the automobile accident; (8) failing to object to Officer Wefler's testimony regarding the cause of Pannell's automobile accident; (9) failing to object to the admission of the 911 call audio tape based on the grounds that it was inadmissible hearsay; (10) failing to impeach Officer Wefler with prior inconsistent statements contained in his deposition; (11) failing to file a motion for an expert witness to establish that the injuries suffered by Leisha were caused by two different weapons; and (12) failing to hire a private investigator to investigate Pannell's automobile accident and determine that Pannell could not have stabbed his wife and then driven home in time to be in an automobile accident miles from his wife's home. (App. 116).

[62] We do not find any error in the post-conviction court's decision. In order to succeed on his ineffective assistance of appellate counsel claim, Pannell was required to show that his appellate counsel was deficient in her performance and that the deficiency resulted in prejudice. *Hollowell v. State*, 19 N.E.3d 263, 269 (Ind. 2014). Ineffective assistance of appellate counsel claims generally fall into three categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Id.* at 270. Here, Pannell's ineffective assistance of appellate claims primarily charge that his appellate counsel was ineffective for failing to raise ineffective assistance of counsel claims concerning Pannell's pre-trial and trial-counsel.

[63] As stated above, when evaluating a claim that an appellate attorney should have raised certain issues on appeal, we must determine (1) whether an unraised issue was significant and obvious from the face of the record; and (2) whether an unraised issue was "'clearly stronger'" than the raised issue or issues. *Graham*, 941 N.E.2d at 1099 (quoting *Fisher*, 810 N.E.2d at 677). We are highly deferential to an appellate attorney's decisions about which issues to raise. *Hollowell*, 19 N.E.3d at 269. Counsel is deficient only if he or she failed to present a significant and obvious issue for reasons that cannot be explained by any strategic decision. *Graham*, 941 N.E.2d at 1099.

[64] As we have already found in prior sections of this opinion, there is no evidence in the record to support Pannell's claim that the police lacked probable cause for his arrest, that Detective Phillips made false statements in the probable cause affidavits, or that Pannell's automobile accident occurred at 11:40 p.m.

rather than 1:00 a.m. There is also no evidence in the record to indicate that Pannell's neighbors witnessed the murder and could have provided exculpatory evidence or that Leisha's injuries were caused by two different weapons. In addition, Pannell has failed to admit the depositions of either of his daughters or Officer Wefler, and the record of the trial proceedings does not include a transcript of either voir dire or Pannell's counsel's opening statement. Finally, we have already determined that Officer Wefler properly testified to his opinion of the cause of the accident. Accordingly, we do not find any merit in Pannell's arguments that his appellate counsel was ineffective for failing to raise issues (1), (2), (3), (4), (5), (6), (8), (10), (11), and (12). *See Graham*, 941 N.E.2d at 1099 (noting that, to prove ineffective assistance of counsel, issues not raised must have been "obvious on the face of the record").

[65] As for Pannell's argument that his appellate counsel was ineffective for failing to argue that his trial counsel should have objected to the foundation for Officer Wefler's testimony, "[t]o establish ineffective assistance for counsel's failure to object, a defendant must establish that the trial court would have sustained the objection had one been made and that he or she was prejudiced by the failure to object." *Jones v. State*, 847 N.E.2d 190, 198-99 (Ind. Ct. App. 2006), *reh'g denied*, *trans. denied.* Pannell argues that his trial counsel should have objected that the State did not establish the foundation for Officer Wefler's testimony because it did not introduce Officer Wefler's accident report into evidence before questioning him about his observations of the scene of the accident. However, Pannell has not provided any support for his argument that the State

was required to introduce an accident report to establish the foundation for Officer Wefler's testimony, so we conclude that Pannell has not proven that the trial court would have sustained his objection. *See id.*

[66] Pannell also asserts that his counsel failed to object to the admission of the 911 audio tape, which he argues was inadmissible hearsay. In *Porter v. State*, 700 N.E.2d 805, 808 (Ind. Ct. App. 1998), we held that, although it varies by case, 911 calls generally fall within the excited utterance exception to hearsay and are therefore admissible. As a result, Pannell cannot show that the trial court would have sustained any such objection. Further, as the post-conviction court noted, the tape was also beneficial to Pannell, and he requested to re-play the entire tape to the jury as part of his case-in-chief. As a result, we conclude that Pannell's appellate counsel was not ineffective for failing to argue that his trial counsel should have objected to the admission of the tape.[7]

---

[7] Pannell also raises additional issues that we will not address in detail. Briefly stated, he argues that the post-conviction court abused its discretion when it denied him a hearing and a ruling on his motion for partial summary disposition. However, that argument is moot as the post-conviction entered judgment on Pannell's petition. *Samm v. State*, 893 N.E.2d 761, 765 (Ind. Ct. App. 2008) (stating that a case is deemed moot when no effective relief can be rendered to the parties before the court and stating that we will not discuss moot questions). In addition, Pannell challenges the post-conviction court's finding that he did not submit an affidavit or testimony from his pre-trial counsel, as well as the post-conviction court's inference that his pre-trial counsel would not have agreed that he provided ineffective assistance. Pannell argues that, contrary to the post-conviction court's finding, he did procure testimony from his pre-trial counsel because he requested the post-conviction court to issue a subpoena to his pre-trial counsel. However, issuing a subpoena to a witness is not equivalent to procuring testimony from that witness. Pannell's pre-trial counsel did not testify at Pannell's hearing, and then at the hearing the post-conviction court ordered Pannell to submit his pre-trial counsel's testimony by affidavit. Pannell did not do so, even though he was given ninety days to comply with the post-conviction court's requirements. Accordingly, we conclude that the post-conviction court's finding was not erroneous.

[67] Because we do not find any error in the post-conviction court's conclusions, we conclude that the post-conviction court properly denied Pannell's petition for post-conviction relief.

Affirmed.

Najam, J., and Bailey, J., concur.